IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY MENEAR, | CIVIL DIVISION |
| Plaintiff, | Case No. 3: 23-CV-159 |
| v. | |
| SEVEN SPRINGS MOUNTAIN RESORT INC., | |
| Defendant. | |

### COMPLAINT AND JURY DEMAND

A. *Preliminary Statement*

1. The plaintiff Terry Menear brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon her disability. In addition, the plaintiff brings this action for violations of the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601 *et seq*. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. A jury trial is demanded.

B. *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about December 8, 2022, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 553-2023-00586. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated May 30, 2023.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C. **<u>The parties</u>**

6. The plaintiff is an adult individual who resides in Champion, Somerset County, PA.

7. The Seven Springs Mountain Resort ("Seven Springs") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant has a principal place of business located at 777 Waterwheel Drive, Champion, PA 15622.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D. **<u>Factual Background</u>**

10. The plaintiff, worked for Seven Springs as the Manager and Sommelier of Helen's Restaurant from October 7, 2013 to February 14, 2022, at which time his employment was terminated.

11. Seven Springs is an all-season resort featuring golf courses, skiing, a convention center and other amenities. Helen's Restaurant is a fine-dining establishment with a Wine Spectator Award Winning wine list.

12. The plaintiff's duties as Manager and Sommelier included running the day-to-day operations of the restaurant (kitchen as well was wait staff), hiring and firing employees and purchasing and marketing wine. The plaintiff was instrumental in securing the Wine Spectator awards and crafted a wine list that featured approximately 300 selections. He managed a wine

inventory that was valued at $60,000 to $80,000. When he took over the position as Manager and Sommelier in 2013, the wine inventory was valued at approximately $9,000.

13.     During the time he was employed, the plaintiff was competent and proficient at performing his job duties, and, in that regard, was considered to be an excellent employee.

14.     The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability, as further detailed below. Specifically, the plaintiff has anxiety and depression. The plaintiff's disability is a mental impairment that substantially limits one or more of the major life activities of the plaintiff.

15.     The plaintiff's job was inherently stressful and involved working at least 50 to 60 hours every week. Throughout his employment, however, the plaintiff was able to manage his stress levels and the anxiety associated with his demanding schedule and he performed all the essential functions of his job with no accommodations. To the extent that he ever would need accommodations, they would be reasonable in nature and, in all probability, requiring nothing more than a day or two off of work.

16.     Tracy Mannino was the Food and Beverage Director and was the plaintiff's supervisor. Dave Runco was the Executive Director of Hospitality. Lori Jones was the Senior Director of Resort Operations/HR.

17.     In January 2022, the plaintiff was working on a renovation of his home. He hired some contractors for the work, but he assisted them throughout the project. On January 3, 2022, the plaintiff and his contractors were working in basement, including running wire for light sockets. The plaintiff's contractors had just left for the day and the plaintiff remained in the basement finishing up the work. He was handling some wiring, not aware that it was "live" and it came into contact with his body, electrocuting him.

18. The plaintiff was immediately knocked unconscious. Fortunately, his wife was at home at the time and called 911. The plaintiff was life-flighted to Conemaugh Hospital in Johnstown where he was treated for his injuries and released approximately five days later.

19. On January 4, 2022, the plaintiff's wife left a voicemail with Human Resources and talked to Emily Gavel, the Assistant Manager, about what had happened, the plaintiff's status and that he would return to work as soon as permitted by his physician.

20. The plaintiff also remained in contact with his employer, sending emails to Gavel, John Kindle, the Chef De Cuisine, and Mannino.

21. The plaintiff was discharged from the hospital on approximately January 8, 2022.

22. On January 12, 2022, the plaintiff had a follow up appointment with his primary care physician. The plaintiff's physician released the plaintiff to return to work effective January 14 and provided him with a note (dated January 12, 2022) to that effect.

23. The plaintiff provided notice to his employer that he would be able to return to work on January 14, 2022.

24. On January 14, 2022, the plaintiff reported to work around 12:30 p.m. He talked with members of his staff, including Kindle, who all seemed happy that he was back. The plaintiff went back to his routine immediately and took care of getting the restaurant open for dinner.

25. Around 6:30 p.m., Mannino called the plaintiff to her office. She asked him how he was doing and how he felt. The plaintiff responded that he felt good and was happy to be back to work. He provided Mannino with the doctor's note. Mannino told the plaintiff, "We can't let you work tonight," which came as a surprise to the plaintiff. She said, "Come in tomorrow and we'll have a meeting."

26. The plaintiff did not understand why he was not permitted to finish his day, but he did not question Mannino and complied with her instructions.

27. The plaintiff returned to work the next day as directed. He sent a text message to Mannino letting her know that he was available to meet. She responded that the meeting would not be in person, but rather by telephone.

28. The participants of the ensuing conference call were the plaintiff, Runco, Mannino, and Jones. Runco did most of the talking. He told the plaintiff that "we're glad you're alright, but we need your doctor to give us more information about what happened to you." The plaintiff did not understand what Runco meant by that and voiced his confusion. Runco requested the plaintiff's "medical file" and said, "well, we just want to make sure that you're safe and that your employees are safe." Unbeknownst to the plaintiff, Runco (and others in management) there were rumors that the plaintiff had tried to kill himself in his basement on January 3, 2022 and they perceived the plaintiff as being in the grips of a suicidal mental illness. Based on these rumors, Runco (and others in management) were "concerned" that the plaintiff might try to hurt himself while working or that he might physically harm other employees. None of this was communicated to the plaintiff during the phone conversation.

29. The plaintiff pointed out that Monday (January 17, 2022) was Martin Luther King Jr. Day and that his doctor's office would, in all probability, be closed. The plaintiff said, "I'll get a hold of my doctor after the holiday." Runco responded, "that's fine, but we can't let you return to work until after you get that information from your doctor." Runco also told the plaintiff that he should go home immediately.

30. On January 18, 2022, the plaintiff was able to meet with his physician. The plaintiff told him what Runco wanted. The physician said, "I released you to return to work.

You're able to work. I don't know what else they want. I've never had an employer tell me that a note was not sufficient." The physician also stated that it seemed that Seven Springs wanted to see his medical records and that he was not comfortable with disclosing personal health information to a third party, especially since he did not know what Seven Springs was looking for.

31. The plaintiff was told to communicate with Jimmy Singer, Human Resources Manager, regarding the medical information that Seven Springs wanted. The plaintiff left a voicemail with Singer telling him that, after talking to his doctor, he did not feel comfortable disclosing his medical records.

32. Thereafter, despite numerous attempts, the plaintiff was not able to reach Singer. His calls to Singer were not returned and no one else would talk to him about his work situation and his attempts to return to work.

33. Significantly, although Seven Springs put the plaintiff on "leave" until he complied with its demands, it did not provide the plaintiff with any notice of his rights regarding medical leave under the Family Medical Leave Act ("FMLA"). Seven Springs did not notify the plaintiff of his eligibility to take FMLA leave. Seven Springs did not notify the plaintiff whether this "leave" would be designated as a medical leave and, more specifically, as FMLA leave. Seven Springs did not provide the plaintiff with written notice detailing his obligations under the FMLA and explaining the consequences for failing to meet those obligations.

34. The plaintiff subsequently learned that there were rumors flying around Seven Springs about the plaintiff's accident and that managers and employees "believed" that the plaintiff did not have an accident, rather that he had attempted to commit suicide. Management and employees had stereotypical and unfounded beliefs that the plaintiff was a "suicide risk"

and/or that he posed a danger to himself and others.  Management and employees knew about the plaintiff's anxiety and depression in a very general sense and they leaped to the conclusion that he was "still suicidal" and should not be permitted to return to work as a result, despite the fact that his own physician provided a release.

35. The plaintiff subsequently received a letter from Seven Springs.  It was dated January 31, 2022 and, in pertinent part, provided as follows:

> … I am reaching out to you today in regards to your employment status at Seven Springs Mountain Resort.  You have not worked since January 2, 2022.  On January 15, 2022, I called and left a voicemail with you to let you know I would be sending a letter for you to provide to your medical provider requesting more information about your extended and unexcused absence and your ability to work.  You replied via voicemail and asked me to email the letter to you, which was completed on January 16.  You then asked me to fax the abovementioned letter to the somerset Family Practice.  While I have spoken with them once via phone on January 24, we have not received any written correspondence from this practice or any other medical provider to date.
>
> **We are asking that you please contact Human Resources upon receipt of this certified letter**.  If we do not hear from you and receive satisfactory documentation from your medical provider within 14 days (two weeks) from today, we can only assume that you are voluntarily ending your employment with Seven Springs Mountain Resort, Inc. …
>
> …
>
> Again, if we do not receive satisfactory medical documentation by **February 14, 2022,** we will consider that you are voluntarily resigning from your position.
>
> We appreciate your service to Seven Springs and certainly wish you well in the future. …

(Bold and underline in the original).

36. This letter contained several inaccuracies:  First, the plaintiff had last worked on January 14, 2022 and reported to work on January 15, before being sent home by Runco, as detailed above, not January 2.  Second, this was the first that the plaintiff heard that his time away from work was in any way "unexcused".  As detailed above, the plaintiff notified Seven

7

Springs on January 4 that he was injured at home, was in the hospital and would not be able to return to work until January 14. No one told him that this was "unexcused" absence. Also, on January 15, Runco told the plaintiff that he should go home and that he could not return to work until he provided his "medical file" and/or other medical information. The plaintiff was not told that complying with Runco's instructions constituted an "unexcused" absence. Third, the plaintiff never received the letter from Singer or anyone else listing the medical information that Seven Springs demanded and, further, to the plaintiff's knowledge (derived after talking to his physician at Somerset Family Practice), neither Singer nor anyone else sent a copy of that letter via facsimile or by any other means to his physician.

37. After receiving Singer's letter, the plaintiff spoke with Kindle, Gavel and William Shaffer, the sommelier who was filling in that role for the plaintiff. It was during these conversations that he learned about the wild and unfounded rumors that were circulating about his mental status and how he had allegedly attempted to commit suicide by electrocuting himself.

38. The plaintiff continued his efforts to reach someone at Seven Springs about the limbo he was in. He tried to reach Singer, who would not return his calls. He also tried reaching Mannino, but she too would not answer and did not call back.

39. The plaintiff received another certified letter from Seven Springs (however, not on Seven Springs letterhead) dated February 14, 2022 terminating his employment:

> …
>
> **Since we have not heard from you in the allotted time span, this letter serves as written documentation that you have voluntarily resigned your position with Seven Springs Mountain Resort, Inc. effective immediately as of February 14, 2022.**

(Bold and underline in the original).

40. The plaintiff did not voluntarily resign his position; his employment was terminated. Seven Springs terminated the plaintiff's employment because of his disability and/or because it perceived him of having a disability.

## FIRST CAUSE OF ACTION

41. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

42. The plaintiff has a disability and thus is protected against discrimination under the ADA.

43. The plaintiff was qualified for his position.

44. At all times relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

45. The plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

46. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

47. The defendant's discharge of the plaintiff was because of his disability, in violation of the ADA.

48. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

49. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

50. The plaintiff was qualified to and eligible for leave under the FMLA.

51. The defendant failed to notify the plaintiff with individual notice of his FMLA rights in violation of 29 C.F.R. § 825.300(b)(1) and 29 U.S.C. § 2615(a)(1).

52. The defendant did not notify the plaintiff in writing whether his medical leave would be designated as FMLA leave in violation of 29 U.S.C. § 825.300(d)(1).

53. The defendant did not notify the plaintiff of the specific amount of leave that would be counted against his FMLA leave entitlement in violation of 29 U.S.C. § 825.300(d)(6).

54. The defendant interfered with, restrained and denied the plaintiff the exercise of his rights to FMLA leave by engaging in the above course of conduct.

55. The defendant interfered with, restrained and denied the plaintiff the right to leave and fired him because he took leave.

56. The defendant retaliated against the plaintiff because he took leave protected by the FMLA.

## THIRD CAUSE OF ACTION

57. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

58. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA, the FMLA and the PHRA, including attorney's fees and costs.

    Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated:  July 19, 2023